I come, therefore, to the inquiry whether there was in fact any contract really concluded between the parties for the sale, or for the procuring and delivery of barley by the defendants to the plaintiffs. There cannot be any dispute about the facts. The correspondence prior to the 30th August, is only material for the purpose of determining who the contracting parties were, and as explanatory to what afterwards took place; for the defendants, by their letter of that date, inserted in the proposed contract a substantial alteration of the terms which the plaintiffs had proposed, *Page 449 
which prevented it from amounting to an acceptance of the contract which the plaintiffs had offered to enter into. That letter was, therefore, a fresh proposal, and amounted to nothing unless it should be assented to by the plaintiffs. On the day the plaintiffs received it by mail at Poughkeepsie, they subscribed the brief contract enclosed in it, which they re-enclosed in a letter addressed to the defendants at Sacket's Harbor. That letter, with its enclosure, arrived at its destination by due course of the mail, and was placed, by the postmaster, in the defendants' drawer at the post office. It was afterwards lost, without actually reaching the hands of the defendants. I do not see the slightest reason to doubt the entire integrity of the defendants. They had no motive for suppressing the letter if they had received it, but a strong one for acknowledging and acting upon it. The loss of the letter was a misfortune, by means of which some two thousand dollars were lost; and the question is upon which of these parties the law casts the burthen of that loss. This depends upon the question whether a binding and operative executory contract resulted from the facts which have been mentioned; for if such a contract was effected, the plaintiffs were entitled to the benefit of it, though the breach on the part of the defendants was not willful or designed, but was the result of accident and misfortune. Where two parties, both being present together, enter into negotiations looking to the making of a contract, the minds of both must ordinarily meet at the same time upon the same identical terms, or no contract is made. Where the parties reside at a distance from each other, and the negotiation is conducted by written correspondence, though there must be the assent of both parties to the same provisions, it is of course impracticable that such assent should be manifested simultaneously. One must state what he is willing to agree to, and the other must, when the proposition has reached him, assent to the same terms, and in some manner manifest that assent. Prior to the case which I am about to mention, the authorities were supposed to leave it doubtful whether a contract was created by the assent of the party to whom the proposal was made, until the *Page 450 
evidence of such assent had actually come to the knowledge of the party who had made the proposal. That doubt was put at rest by the decision of the court for the correction of errors, inMactier v. Frith, (6 Wend. 106.) Two persons were joint owners of a cargo of brandy which had been shipped on their account in France for the port of New-York. Frith, one of the parties, resided at St. Domingo, and Mactier, the other joint owner, resided in New-York. Frith, while the cargo was supposed to be at sea, wrote to Mactier, proposing that the latter should take the adventure solely on his own account. While that offer remained open, and after the brandy had arrived in New-York, Mactier wrote to Frith that he had decided to take the adventure on his own account, and had credited him, Frith, with the invoice. The letter was forwarded, but before it could reach Frith, Mactier died, and a controversy arose between Frith and the representatives of Mactier, as to the ownership of Frith's original share of the cargo. The determination of this controversy depended upon the question whether a contract of sale had been consummated before Mactier died. The court held, reversing a decree of the chancellor, that such a contract had been concluded. The principle established was that it was only necessary that there should be a concurrence of the minds of the parties upon a distinct proposition, manifested by an overt act; that the sending of a letter announcing a consent to the proposal was a sufficient manifestation, and consummated the contract from the time it was sent. The court therefore held that the property in the brandies passed in Mactier's lifetime.
It would answer no useful purpose to review the antecedent authorities which were examined and considered in that case. Being a judgment of the court of last resort, it is high evidence of the law, and necessarily decides the question now before us, unless there is a material distinction in principle between the two cases. The contract in the case of Frith v. Mactier was an executed one; but the alleged agreement here was executory. I do not perceive that this constitutes a distinction favorable to *Page 451 
the defendants. If such facts would constitute a contract which would pass the title to property, there is no good reason for holding that it would not be sufficient to bring into existence an executory undertaking, binding the parties by way of agreement.
The defendants' counsel however maintains that by a fair construction of the proposition made by the defendants in their letter of the 30th of August, it was made a condition that the contract should not become operative until the plaintiffs' assent had actually come to the knowledge of the defendants. Notwithstanding the rule of law which I have considered as settled by the judgment of the court of errors, I do not doubt but that a party proposing to contract may make it a condition that no bargain shall arise or be consummated until the affirmative answer of the other party shall be actually received by the party proposing. The question then is whether such a condition is found in this letter. It is not so stated in terms. By the next preceding letter of the plaintiffs they had proposed the 20th of October as the time for the delivery of the barley. The defendants changed the time by extending it ten days; till the 30th of October. For this change they give the following reason: "We have extended the period of delivery to the 30th of October, as there will be at least ten days delay from the date of your letter before we can receive and act upon your reply." There is nothing in this, as it seems to me, indicative of an intention to shift the consequences of a miscarriage of a letter from the plaintiffs to the defendants. It is apparent that no idea of the loss or miscarriage of the plaintiffs' expected letter was in the minds of the defendants. They counted on the fidelity of the mails and of the officers of the post office, and as a delay in completing the contract had arisen from the modification of the terms, they proposed a later period for the delivery of the barley corresponding with that delay. To create a distinction which should be sufficient to take a case out of the rule of law to which I have referred, the condition should be explicitly stated, so that the party to whom the proposal is made, may, should he think proper, dispatch a messenger or take some other method of performing the *Page 452 
condition by bringing the acceptance home to the knowledge of the other party. But the letter proceeds: "As soon as received, that is, [the answer,] we shall send among the farmers and secure the first lot," c. This remark conveyed no intimation to the plaintiffs that a condition was intended to be annexed, which would change the ordinary rule of law. It seems to have been made in order to show the plaintiffs the kind of diligence and energy with which they intended to execute the contract. They had placed the time of delivery so remote as to afford them time to purchase and forward the barley after the receipt of the acceptance, taking into account the ordinary delays of the mail. That the mail was contemplated as the medium of transmission is perfectly plain from all the letters, and especially from the subsequent ones written by the defendants, in which they suggest that the miscarriage has been occasioned by an error in that department. Such delays the defendants took into consideration and provided for, but they made no suggestion as to what was to be the consequence of the miscarriage of a letter, simply because no such circumstance had crossed their minds. Upon the whole case, I am of opinion that the contract became operative when the plaintiffs signed the duplicate contract and placed it in the post office addressed to the plaintiffs, and that the accident by which the letter failed to come to the actual knowledge of the defendants was the misfortune of the defendants and not of the plaintiffs. I am consequently in favor of affirming the judgment of the supreme court.
Judgment accordingly. *Page 453